1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF CALIFORNIA

8

9 | MARIA ELENA AVILA,                              CASE NO. 1:09-cv-02139-SMS

10                              Plaintiff,

11        v.                                      ORDER AFFIRMING AGENCY'S
                                                  DENIAL OF BENEFITS AND ORDERING
                                                  JUDGMENT FOR COMMISSIONER
12 | MICHAEL ASTRUE,
   | Commissioner of Social Security,

13

14                              Defendant.
   | _____/

15

16

17        Plaintiff Maria Elena Avila seeks judicial review of a final decision of the Commissioner

18 of Social Security ("Commissioner") denying her application for disability insurance benefits

19 under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act").  The matter is

20 currently before the Court on the parties' cross-briefs, which were submitted, without oral

21 argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.[1]  Following a

22 review of the complete record and applicable law, this Court finds the decision of the

23 Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a

24 whole and based on proper legal standards.  Accordingly, this Court affirms the Commissioner's

25 determination.

///

26 ///

27

28

_____

[1]  Both parties consented to the jurisdiction of a United States Magistrate Judge (Docs. 9 & 10).

1

I.   **Administrative Record**

A.   **Procedural History**

On June 30, 2005, Plaintiff filed an application under Title II for a period of disability and disability insurance benefits beginning April 30, 2005. The claims were initially denied on March 9, 2007.  Plaintiff requested a hearing on May 1, 2007.

Plaintiff appeared and testified at a hearing on July 15, 2008.  In a decision dated September 3, 2008, Administrative Law Judge Michael J. Kopicki denied Plaintiff's application. On October 2, 2009, the Appeals Council affirmed the ALJ's decision.  On November 24, 2009, Plaintiff filed her complaint in this Court.

B.   **Factual Record**

Plaintiff (born March 20, 1957) was an administrative assistant for Bank of America for over 27 years.  She stopped working upon her hospitalization on April 15, 2005.  Plaintiff initially alleged that her heart surgery and emotional problems, which caused weakness, shortness of breath, seizures, and her ensuing heart condition prevented her from returning to work.

Since early 2005, Plaintiff has experienced multiple health issues, including seizures, cirrhosis of the liver, diabetes mellitus, intracranial hemorrhage, aortic valve stenosis with valve replacement, pneumonia, congestive heart failure, hypothyroidism, anemia, obesity, recovery from alcoholism, gynecologic difficulties, and depression.  She incurred broken ribs and a fractured spleen in a car accident.  Because Plaintiff's appeal addresses only her claim of debilitating sleep apnea, however, this opinion considers only the facts relevant to this disorder.

Internist Steven Stoltz, M.D., evaluated Plaintiff for the agency on November 20, 2005. Although Plaintiff still exhibited symptoms of an auto accident two weeks before in which she broke multiple ribs, her chronic medical conditions were well-controlled.  Plaintiff herself was unable to drive because of her seizure disorder.  She told Stoltz that her single most severe factor at that time was depression.   Stoltz recommended that the agency arrange for a psychiatric consultation.  Because Plaintiff apparently did not complain of sleep apnea, Stoltz did not address it.

Psychologist William A. Spindell, Ph.D., evaluated Plaintiff for the agency on May 5, 2006. He described a well groomed and well informed, but tearful, woman. Her memory was good. Her affect was flat and she was depressed. Spindell found that Plaintiff tested as having borderline intellectual function but opined that her intellectual functioning was depressed from the residuals of open heart surgery and her seizure disorder. Spindell opined:

> [Plaintiff] at age 49 has had a significant medical history. She worked for Bank of America for 30 years. After her car accident and aneurysm she went back to work, but only for a few days. She is confused by the details of her work. She is now the mother of a 17-year-old and finds herself easily accomplishing her [activities of daily living], but very slowly. She does shop, but has the assistance of a friend. She has a difficult time now in the labor market. She could be a risk to herself and others in the workplace. She could handle her own benefit funds if eligible for benefits.

> AR 283.

Again, because Plaintiff apparently did not report sleep apnea to Spindell, he did not address it.

On May 15, 2006, Plaintiff's marriage and family therapist, Judith Finer described Plaintiff as "struggling with depressed mood, irritability, daily crying spells, and low self-worth." AR 293. On the same date, Yoshimura noted that Plaintiff had persistent depression. Despite medication, Plaintiff continued to experience break-through seizures. Neither Finer nor Yoshimura addressed sleep apnea.

A diagnosis of sleep apnea is first noted in Plaintiff's medical records on June 30, 2008, when Plamen V. Yosifov, M.D., reported moderate sleep apnea and recommended CPAP titration. Yosifov's diagnosis was based on a single night's use of a home sleep study device. On July 1, 2008, Plaintiff was advised that she met the diagnostic criteria for sleep apnea and directed to make an appointment for a two- to three-night study in the sleep laboratory of The Permanente Medical Group.

At the July 15, 2008 hearing, Plaintiff testified that she suffered from fatigue and an inability to concentrate for more than about fifteen minutes. She described her lack of concentration as losing interest in the task at hand because she was unable to understand it. She slept poorly and had pounding headaches nearly every day. In addition, a side effect of the Dilantin-Keppra prescribed to control her seizures was exhaustion and an inability to focus.

Plaintiff testified that she had maintained the same daily routine for several years.  She slept poorly, awakened at 7:00 a.m. to take medication and feed her cats, then returned to sleep until about 9:30 a.m.  She then got up and performed light housework.  She again needed to rest at about 1:00 or 2:00 p.m., when she took a one-and-a-half- to two-hour nap.  She sometimes fell asleep again for about an hour after taking her 5:00 p.m. medication.

She enjoyed sketching and painting, attended AA meetings, and sometimes talked to friends on the phone.  Plaintiff watched little television, which put her to sleep, and read at night to go to sleep.  She briefly attended an adult school computer class from 10:00 to 12:00 a.m., but stopped attending since she could not concentrate and would "go home and sleep."

Plaintiff's daughter would not permit Plaintiff to watch her infant grandson because of her propensity to doze off unexpectedly.  Plaintiff admitted that because she had recently found herself snoring when her daughter allowed her to briefly watch the baby while her daughter ran a quick errand, she was afraid to babysit despite her desire to do so.

In response to the ALJ's question about how she could have concentrated in her job while still an alcoholic but could not concentrate now, Plaintiff explained that her difficulty focusing seemed to be the result of the combination of her medical and emotional issues, her giving up alcohol and ending her abusive marriage, and her teen-aged daughter's rejection.  Plaintiff's sleeping problems and frequent headaches seemed to be interrelated.  When she told her doctors she had difficulty concentrating, they referred Plaintiff to the sleep lab.

## II.   Discussion

### A.   Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful

///

1
2

work existing in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir.

1989).

3
4
5
6

To encourage uniformity in decision making, the Commissioner has promulgated

regulations prescribing a five-step sequential process for evaluating an alleged disability.  20

C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  The process requires consideration of the following

questions:

7

| | |
|---|---|
| Step one: | Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two. |

8
9

| | |
|---|---|
| Step two: | Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate. |

10
11

| | |
|---|---|
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four. |

12
13

| | |
|---|---|
| Step four: | Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five. |

14
15

| | |
|---|---|
| Step five: | Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

16

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

17
18
19
20
21
22
23
24
25

ALJ Kopicki found that Plaintiff had not engaged in substantial gainful activity since the

alleged onset date of April 30, 2005.  Her severe impairments included seizures, depression,

history of valve replacement, and history of intracranial hemorrhage.  Additional nonsevere

impairments included alcohol abuse in sustained remission, apnea, cirrhosis (possible), and

diabetes mellitus, all of which had minimal effect on Plaintiff's ability top perform work

activities.  The ALJ concluded that none of Plaintiff's impairments met or equaled an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Plaintiff was unable to perform

her past work as a bank customer service representative.  She was, however, able to perform

other jobs that existed in significant numbers in the national economy.

26

**B.    Scope of Review**

27
28

Congress has provided a limited scope of judicial review of the Commissioner's decision

to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

a court must determine whether substantial evidence supports the Commissioner's decision.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence.  *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

### C.    Plaintiff's Sleep Apnea

As previously noted, Plaintiff's sole contention on appeal is that the ALJ failed to categorize her sleep apnea as a severe impairment and to conclude that it resulted in her total disability.  Although Plaintiff raises several ill-conceived arguments why the ALJ should have found her sleep apnea disabling, she cannot overcome the insufficient evidence relating to her sleep apnea claims.

The record does not even mention sleep apnea until June 29, 2008, more than three years after Plaintiff contended she had become disabled.  Even then, the evidence is equivocal: Plaintiff used a home sleep study device for a single night, after which Yosifov opined that she had moderate sleep apnea and recommended that she undergo a more thorough sleep study consisting of two or three nights in the sleep lab.  Two weeks later, Plaintiff testified that she was referred for a sleep apnea evaluation because of her complaints that she was unable to sleep and to concentrate.  That is the only evidence in the record regarding sleep apnea.

### 1.    Plaintiff's Credibility

Emphasizing Plaintiff's testimony about her fatigue and inability to concentrate, Plaintiff contends that the ALJ erred in minimizing the credibility of Plaintiff's testimony regarding her

sleep apnea.  The Commissioner responds that Plaintiff has confused her testimony recounting her symptoms with medical opinions about her residual functional capacity.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement.  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  But if he or she decides to reject a claimant's testimony after a medical impairment has been established, the ALJ must make specific findings assessing the credibility of the claimant's subjective complaints.  *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991).  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988).  He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive.  *Orn*, 495 F.3d at 635.  *See also Robbins v. Social Security Administration*, 466 F.3d 880, 885 (9th Cir. 2006).  The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between her testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms.  *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996).  If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision.  *Thomas*, 278 F.3d at 959.

*///*

The Ninth Circuit has summarized the applicable standard:

[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific cogent reasons for the disbelief.'" *Morgan*, 169 F.3d [595,] 599 [9th Cir. 1999] (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony . . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedent in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir. 1998) (concluding the ALJ's decision at step three of the disability determination was contrary to agency rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

*Orn*, 495 F.3d at 635.

Plaintiff did not testify specifically about sleep apnea beyond stating that her physicians referred her to the sleep laboratory in response to her complaints of difficulty to concentrate. Plaintiff's testimony never directly tied her sleepiness and difficulty concentrating to sleep apnea. In fact, she specifically attributed many of her symptoms to other causes, including medication and life stressors.

In any event, the ALJ thoughtfully explained  in great detail his reasons for discounting Plaintiff's credibility, contrasting the apparent severity of Plaintiff's recent medical history with her ability to continue to do work, perform housework, exercise at Curves, care for her personal needs, attend real estate classes, and perform light housework, laundry and cooking. The ALJ acknowledged the fatigue that accompanied Plaintiff's activities but concluded that Plaintiff retained the residual functional capacity to perform light work. His determination was supported by substantial evidence.

### 2. **Obesity**

In support of her claim that her sleep apnea was a severe impairment, Plaintiff contends that her medical records established that she was severely obese. Obesity was removed from the

1   listing of impairments in 1999.  Thereafter, obesity may still enter into a multiple impairment

2   analysis, but "only by dint of its impact upon the claimant's musculoskeletal, respiratory, or

3   cardiovascular system." *Celay v. Halter*, 332 F.3d 1177, 1181 n. 1 (9ᵗʰ Cir. 2003).  An ALJ need

4   only include obesity in a multiple impairment analysis if it is "clear from the record that [the

5   plaintiff's] obesity . . . could exacerbate [his] reported illnesses." *Id.* at 1182.  The multiple

6   impairment analysis need not include obesity if the record is silent regarding (1) whether and

7   how the claimant's obesity might have exacerbated his other medical conditions and (2) whether

8   and how the claimant's obesity negatively affected his ability to work. *Burch v. Barnhart*, 400

9   F.3d 676, 682 (9ᵗʰ Cir. 2005).

10      A claimant must present evidence that reasonably alerts the ALJ that his or her obesity

11  exacerbates her other symptoms.  *Edwards-Alexander v. Astrue*, 336 Fed.Appx. 634, 637 (9ᵗʰ Cir.

12  2009).  "The fact that obesity is a risk factor for other impairments does not mean that

13  individuals with obesity necessarily have any of these impairments."  SSR 02-01p.

14      Even when an individual is morbidly obese, and his or her obesity affects his or her other

15  impairments, he or she may still be able to perform basic work activities despite his or her

16  impairments alone or in combination.  *Papen v. Comm'r of Social Security Admin.*, 349

17  Fed.Appx. 205, 207 (9ᵗʰ Cir. 2009).  When the claimant failed to set forth evidence establishing

18  that his obesity combined with other impairments increased the severity of his limitations, the

19  ALJ did not err in failing to consider it.  *Hoffman v. Astrue*, 266 Fed.Appx. 623, 625 (9ᵗʰ Cir.

20  2008).  To require an ALJ to address obesity when the claimant did not raise the issue before him

21  would eviscerate the claimant's burden of proving a medically determined impairment.  *Bowser*

22  *v. Commissioner of Social Security*, 121 Fed.Appx. 231, 236-37 (9ᵗʰ Cir. 2005).  In the absence of

23  sufficient evidence, the ALJ may not make assumptions about the severity of a claimant's obesity

24  or its effect on other impairments.  SSR 02-01p.  *See also Burch*, 400 F.3d at 683 (finding that

25  the plaintiff's obesity did not significantly limit her ability to perform work).

26      Although represented by counsel, Plaintiff never raised the obesity issue below.  Nothing

27  in the record identifies Plaintiff's obesity itself as creating a functional limitation that prevents

28  Plaintiff for engaging in any activity.  Although the medical notes of various physicians recorded

Plaintiff's weight and sometimes identified her as obese, no physician opined that Plaintiff's

obesity created or exacerbated her sleep apnea.  No physician tied Plaintiff's obesity to her sleep

apnea.  *Contrast this case with Glass v. Barnhart*, 163 Fed.Appx. 470, 472 (9th Cir. 2006) (expert

witness testified that the claimants functional capacity was limited by the combination of morbid

obesity (450 pounds) and knee problems).

The ALJ did not err in failing to address Plaintiff's obesity as a factor in her sleep apnea.

### 3.    Physicians' Opinions

Plaintiff confuses Yosifov's tentative diagnosis of moderate sleep apnea with an opinion

that sleep apnea constitutes a severe impairment.  Identifying Yosifov as a treating physician

cannot overcome the insufficient evidence of the diagnosis and any effect it might have on

Plaintiff's ability to engage in substantial gainful activity.

Physicians render two types of opinions in disability cases: (1) medical, clinical opinions

regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to

perform work.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  The regulations

provide that medical opinions be evaluated by considering (1) the examining relationship; (2) the

treatment relationship, including (a) the length of the treatment relationship or frequency of

examination, and the (b) nature and extent of the treatment relationship; (3) supportability; (4)

consistency; (5) specialization; and (6) other factors that support or contradict a medical opinion.

28 C.F.R. § 404.1527(d).

Three types of physicians may offer opinions in social security cases: "(1) those who

treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the

claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant

(nonexamining physicians)."  *Lester*, 81 F.3d at 830.  A treating physician's opinion is generally

entitled to more weight than the opinion of a doctor who examined but did not treat the claimant,

and an examining physician's opinion is generally entitled to more weight than that of a non-

examining physician.  *Id.*  The Social Security Administration favors the opinion of a treating

physician over that of nontreating physicians.  20 C.F.R. § 404.1527; *Orn*, 495 F.3d at 631.  A

treating physician is employed to cure and has a greater opportunity to know and observe the

patient. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).  Nonetheless, a treating

physician's opinion is not conclusive as to either a physical condition or the ultimate issue of

disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Yusifov offered no more than an initial diagnostic opinion, intended to be supplemented

by more controlled and extended testing and observation in the sleep lab. Although Yusifov was

intended to become a treating physician, Yusifov's short-term relationship with Plaintiff reduces

the weight to which that opinion is entitled.  In fact, the record does not clearly indicate whether

Plaintiff and Yusifov had actually met before he reviewed the results of the at home sleep

evaluation.  As such, although Yusifov was a specialist in treating sleep disorders, his initial

diagnosis was no more than tentative, intended to be confirmed and refined by additional study.

In light of the early stage of investigation of Plaintiff's apparent sleep apnea, it is not surprising

that neither Yusifov nor any other physician rendered an opinion on whether or how sleep apnea

affected Plaintiff's residual functional capacity.

"The mere existence of an impairment is insufficient proof of disability."  *Matthews v.*

*Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).  A plaintiff bears the burden of producing medical

evidence establishing the existence of an impairment, its severity, and how it affects the

plaintiff's functioning.  20 C.F.R. § 404.1512 (c).   Plaintiff having failed to meet her burden of

proof, substantial evidence supported the ALJ's recognizing Plaintiff's sleep apnea as an

additional nonsevere impairment.

**III.**    **Conclusion and Order**

Plaintiff appealed the Commissioner's decision solely on the basis of a last minute

diagnosis of sleep apnea.  By the time of the hearing, two weeks after the diagnosis, sleep

apnea's existence as an impairment, its severity, and how it affected the plaintiff's functioning

was undetermined, and Plaintiff failed to meet her burden of proving that sleep apnea disabled

her.  As a result, the ALJ properly treated the diagnosis as sleep apnea as a nonsevere

impairment.

The Court finds that the ALJ applied appropriate legal standards and that substantial

credible evidence supported the ALJ's determination that Plaintiff was not disabled.

1    Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the

2    Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor

3    of the Commissioner and against Plaintiff.

4

5    IT IS SO ORDERED.

6    **Dated:** _____**July 1, 2011**_____                    _____/s/ **Sandra M. Snyder**_____
                                                             UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28